WHATLEY DRAKE & KALLAS, LLC
Joe R. Whatley, Jr.
jwhatley@wdklaw.com
Edith M. Kallas
ekallas@wdklaw.com
Patrick J. Sheehan
psheehan@wdklaw.com
1540 Broadway, 37th Floor
New York, NY 10036
Tel: (212) 447-7070
Fax: (212) 447-7077

THE CONSUMER LAW GROUP
Alan M. Mansfield (SBN 125998)
alan@clgca.com
9466 Black Mountain Rd., Suite 225
San Diego, CA  92126
Tel: (619) 308-5034
Fax: (888) 341-5048

Howard Rubinstein
Attorney at Law
howardr@pdq.net
914 Waters Avenue, Suite 20
Aspen, CO 81611
Tel: (832) 715-2788

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE MEAUNRIT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONAGRA FOODS, INC.,<br><br>Defendant. | Case No. CV 09-2220-CRB<br><br>CLASS ACTION<br><br>SECOND AMENDED COMPLAINT FOR:<br>1) UNLAWFUL AND UNFAIR BUSINESS PRACTICES;<br>2) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT;<br>3) BREACH OF EXPRESS AND IMPLIED WARRANTIES;<br>4) VIOLATION OF MAGNUSON-MOSS WARRANTY ACT;<br>5) COMMON COUNTS AND UNJUST ENRICHMENT/COMMON LAW RESTITUTION;<br>6) DECLARATORY RELIEF<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Julie Meaunrit, both individually and on behalf of all others similarly situated, upon both personal knowledge where specifically so stated and otherwise on information and belief, which allegations are based upon an investigation by counsel and that may have evidentiary support after an opportunity for discovery, alleges as follows:

## NATURE OF THE ACTION

1.      This is a consumer class action concerning deceptive and unfair business practices by Defendant Conagra Foods, Inc. ("Conagra").  Conagra, either directly or through its affiliated companies, designed, manufactured, marketed and sold various types of frozen food products in the United States.  Conagra sells frozen food products under the "Banquet" brand in grocery stores and retail outlet stores in California and the United States.

2.      Conagra defectively designed the products at issue herein in such a manner that, if prepared as directed by Conagra, they would not reach the "kill step" temperature necessary to destroy dangerous bacteria in the Banquet brand beef, chicken and turkey pot pies placed into the market for consumption by consumers, including small children.  Because Conagra failed to use appropriate quality control measures within its supply chain, almost every ingredient in these products is a potential carrier of pathogens, according to government and industry officials.

3.      While these pathogens can be destroyed if the pot pies are properly cooked, these products have been defectively designed such that even if a consumer is able to ascertain the information necessary to follow the cooking instructions supplied on the product packaging for the safety of such products and have the necessary equipment, they may not reach the required "kill step" temperature.

4.      Conagra concedes that it cannot ensure the safety of its food items.  Thus, even though it has exclusive knowledge of its supply chain, it is unfairly trying to shift the burden to the consumer to stop the risks from these pathogens – even though it has the burden under the law not to sell adulterated products in the first place.  Since there is no reasonable way to know whether Salmonella or other bacteria has been destroyed based on the design of these products, Plaintiff and the class suffered harm due to Conagra's conduct.

/ / /

5.      This action seeks compensatory damages as well as equitable, declaratory, injunctive and all other relief allowed in equity or at law.

## JURISDICTION AND VENUE

6.      The Court has jurisdiction over this action under 28 U.S.C. §1332(d), the Class Action Fairness Act, because the suit is a class action, the parties are minimally diverse, and the amount in controversy exceeds $5 million, excluding interest and costs.

7.      Venue is proper in this District under 28 U.S.C. §1391 because Plaintiff resides in this District, and because a substantial part of the events or omissions giving rise to these claims occurred in this District.

## PARTIES

8.      On personal knowledge, Plaintiff Julie Meaunrit is an individual and resident of this District as she resides in San Francisco, California.  Over the last several years, Plaintiff has purchased frozen pot pies for consumption by her family made by Conagra, some as recently as April 2009.  Plaintiff reasonably believed the products were properly and safely designed and that the products would be safe for consumption if microwaved for the time stated on the product. She recalls seeing advertisements for these products stating that they were microwaveable, including on small cardboard signs protruding from the frozen food section where she purchased such products. A substantial factor in deciding to purchase these products was the fact the products were represented to be microwavable, and her reasonable assumption that if she did so the products would be safe for consumption by her family.  Yet, if she follows the cooking directions, the product does not reach the "kill step" temperature.  Based on recent reports referenced herein from The New York Times documenting that these frozen pot pies could not be cooked to the required temperature if the directions as to how long to cook the product in the microwave were followed, Plaintiff believes she had no choice but to throw out these products as she cannot guarantee the safety of these products for consumption by her family, as a result of which she sustained a loss of money or property.  Such facts were material to her, since if she had been told these products contained harmful pathogens or that the design of the product was such

///

that even if she followed the cooking instructions it could lead to unsafe food, she would not have purchased such products or paid the prices she did.

9.     Defendant ConAgra Foods, Inc. is a Delaware corporation with its principal place of business located at One ConAgra Drive 1-237, Omaha, Nebraska 68102.  ConAgra conducts business in this District through the sales of its food products through numerous retail and grocery stores in this District.  ConAgra develops, produces, markets and sells frozen food products and distributes its products to major grocery stores and retailers.  Defendant ConAgra also maintains distribution and warehousing facilities throughout the United States, and likely in California.

## FACTUAL ALLEGATIONS

### *Many Frozen Food Products Contain Harmful Bacteria*

10.     Previous reports have indicated that frozen food products have been found to contain various bacteria, including chloriform or Salmonella and other pathogens.  According to the Center for Disease Control, Salmonella is a group of bacteria that can cause diarrheal illness in humans.  Salmonella bacteria are microscopic living creatures that pass from the feces of people or animals to other people or animals.  There are many different kinds of Salmonella bacteria, and Salmonella serotype Typhimurium and Salmonella serotype Enteritidis are the most common in the United States.  Salmonella germs have been known to cause illness for over 100 years.   As a result, food manufacturers must be extremely vigilant about the potential for Salmonella or other bacteria in their supply chain and frozen food products.

11.     It should be relatively easy for Conagra to avoid the potential for Salmonella contamination, since Salmonella is usually transmitted to humans by eating foods contaminated with animal feces.  It should not be controversial whether Conagra should avoid introducing such contaminants into foods for public consumption.  One of the problems associated with Salmonella is that foods contaminated with Salmonella usually look and smell normal, so even eating or smelling the food would not alert consumers to a possible issue.  Moreover, Salmonella poisoning is very difficult to diagnose.  Many different kinds of illnesses can cause diarrhea, fever, or abdominal cramps.  Determining that Salmonella is the cause of the illness depends on laboratory tests that identify Salmonella in the stool of an infected person.  Once Salmonella has been

identified, further testing can determine its specific type.  But unless consumers are aware of this potential for infection, neither they nor their physicians may suspect their illness is attributable to the presence of Salmonella or other pathogens in frozen food products.

12.     Conagra does not adequately test for pathogens within the constituent elements of its frozen food products and does not have adequate control over their supply chain, and thus concedes it cannot ensure the safety of the items it distributes for human consumption because almost every element of its frozen food products is a potential pathogen carrier.

13.     Contaminated foods are often of animal origin, such as beef, poultry, milk, or eggs.  Thorough cooking kills Salmonella and other pathogens; however, with the products in question it is difficult to determine if they have been thoroughly cooked and, therefore, whether cooking of the products has killed any harmful pathogens.  Thus consumers such as Plaintiff must rely solely on the design of the product and/or the accuracy of these products' instructions to ensure the safety of the products they consume.

14.     It is particularly important for manufacturers and distributors of food products to refrain from exposing consumers, and particularly small children, to the potential for being infected with bacteria that can induce harmful physical reactions.  This is a material fact and duty. Conagra was aware of or should have known but failed to adequately protect against, attempting to shift their corporate responsibility on to the consumers of its products.

15.     Reasonable consumers would attach importance to facts regarding the potential of such pathogens in these products in determining whether to purchase such products, making such facts material to consumers.  However, under the circumstances present here, no reasonable consumer could make such a determination, particularly prior to purchasing such products.  For example, while it might be relatively easy to figure out when certain foods are "well-done" by physically checking the food, it is unreasonable to expect consumers know how the cooking power of their microwave ovens compares with other ovens, or potentially even to know what that wattage is, since such information may or may not be on the oven, but Conagra fails to provide information to consumers as to how to obtain information that, at least according to it, is essential to preparing these products in a microwave oven.  In addition, as one food scientist

explained, "Even if I have a 1,000-watt microwave, how do I know if it's high, medium or low?" according to Douglas Powell, an associate professor and scientific director of the International Food Safety network at Kansas State University ("IFSN").

16.     In addition, these products are designed in such a way that, even if the cooking directions are followed, the products may not reach the required internal temperature to kill such pathogens, which is approximately 170 degrees throughout the entire product.

17.     As stated by another food scientist, Dr. Michael Osterholm, "I do not believe it is fair to put this responsibility on the back of the consumer, where there is substantial confusion about what it means to prepare that product."

18.     True and correct copies of exemplars of the product packaging for the Banquet pot pie brand purchased by Plaintiff are attached hereto as Exhibit 1.

19.     ConAgra has a widely publicized history of consumer product recalls of these products due to Salmonella contamination.  According to the IFSN, in October 2007, at least 270 people in 36 American states got sick with Salmonella after eating ConAgra's pot pies, leading to a national recall and prompting many to question the safety of microwave cooking.  Ultimately an estimated 15,000 people were infected with Salmonella poisoning.  Thus, Conagra was on notice and either knew, or should have known, that it needs to be particularly vigilant about the presence of Salmonella or other pathogens in the supply chain and the need to design its products to kill such pathogens, or avoid them altogether.

20.     As *The New York Times* recently concluded in an article from May 2009, "unwitting consumers who buy these products for their convenience mistakenly think that their cooking is a matter of convenience and not safety."

21.     Conagra has promoted and advertised, through television, radio and print ads, that its pot pie products are quickly microwavable for a number of years.  For example, in a nationally televised ad that it ran in late 2006 starring race car driver Tony Stewart, Conagra promoted to consumers the image that its pot pie products were quickly microwavable, with the ad promoting that its pie products are a "complete meal in minutes" and an "oven baked taste for the microwave in just four minutes."   To Plaintiff's knowledge, Conagra has never engaged in a corrective

advertising campaign, which is reinforced by the product packaging's second largest word stating the product is "microwaveable".

22.     Conagra's design, oversight and quality controls were and are inadequate, resulting in the potential for Salmonella and other pathogens to be in these food products and not destroyed when cooked, even though these products are intended to be consumed by young children.

23.     Conagra failed to properly test and screen product ingredients during and after the manufacturing process and failed to design the products to be cooked in a manner that ensures these products were safe before placing the food products into the stream of commerce, and as a result sold adulterated food products to the consumer public targeted by such products, as that term is defined by, *inter alia*, Cal. Health & Safety Code §§110545 *et seq.* and §113732.

24.     Plaintiff is conscientious about food safety and reasonably presumed the frozen food products she purchased were safe and appropriate for their intended use if cooked in a microwave oven as advertised and promoted by Conagra.  Plaintiff purchased the defective food products at stores in California for use by her family.

25.     Among other advertisements, Plaintiff reviewed and considered Conagra's in-store promotions that its pot pie products were quickly microwavable in making her purchase.

26.     Conagra's defective food products failed to provide the safety and quality reasonably expected by consumers, and neither Plaintiff nor likely many Class members would have purchased these products or paid the prices they did had these material misrepresented and undisclosed facts been disclosed (i.e., that the products were microwavable, but even if a consumer microwaved the product as Conagra directed they could not ensure the product was free from pathogen contamination).

27.     Based on the need to protect the public from being unnecessarily exposed to toxic bacteria in food products, Conagra owes a duty to Plaintiff and to Class members to design, manufacture, market, distribute and sell food products without hidden and concealed latent defects that cannot be identified or may not be destroyed based on the design of the product, even if a product has been cooked according to Conagra's own instructions.

28.     Conagra breached and continues to breach that duty by placing into the stream of commerce unreasonably dangerous products that are not fit for their intended use. These products are unreasonably dangerous and defective because they may contain toxic bacteria that cause severe illness in consumers, and particularly small children. Conagra breached this duty, which caused injury in fact and a loss of money or property to Plaintiff in terms of monies expended on products that she no longer feels are safe for her or her children to eat, even if microwaved as instructed.

29.     Conagra in the exercise of reasonable care should have known these particular food products were defective in their design and manufacture. Conagra also should have known Plaintiff and Class members may reasonably have been expected to purchase and use these food products and could be affected by their defective condition.

<u>**CLASS ACTION ALLEGATIONS**</u>

30.     Plaintiff brings this action individually and as a class action under Federal Rule of Civil Procedure 23 on behalf of all persons, either in California or throughout the United States, who purchased, other than for resale or distribution, pot pie products under the Banquet brand name since January 1, 2008. Excluded from the Class are Conagra's and the Court's officers and directors, families or legal representatives, heirs, successors, or assigns and any entity in which Conagra has or had a controlling interest.

31.     Plaintiff reserves the right to amend or modify the Class definition in connection with a Motion for Class Certification or the result of discovery.

32.     Joinder of the individual members of the proposed Class is impracticable. The Class includes tens of thousands of persons geographically dispersed throughout California and the United States. The precise number and identities of Class members are unknown to Plaintiff, but may be able to be ascertained through discovery by using retail records of sales and other information kept by Conagra or its agents or retailers. Notice can be provided through a combination of e-mail, mail, sign postings and publication, the cost of which should be imposed upon Conagra.

/ / /

1        33.     The Class is ascertainable and there is a well-defined community of interest in the

2 questions of law and/or fact alleged since the rights of each Class member were violated in

3 similar fashion based upon Conagra's misconduct.

4        34.     Questions of law or fact common to the Class exist as to Plaintiff and all Class

5 members, and these common questions predominate over any questions affecting only individual

6 Class members.  Among the common questions of law and fact are the following:

7           (a)     whether Conagra distributed the food products at issue containing

8 dangerous bacteria;

9           (b)     whether Conagra's design of the food products made them defective or

10 unreasonably dangerous for their intended use;

11           (c)     whether Conagra failed to properly disclose or warn Plaintiff and the Class

12 about the potential dangers and adverse health effects arising from the preparation of such

13 products in accordance with the product directions, even if they could be followed;

14           (d)     whether Conagra violated California consumer protection laws in the

15 manufacture, distribution, marketing and/or sale of these food products;

16           (e)     whether Conagra was unjustly enriched by selling these products;

17           (f)     the appropriate nature of class-wide equitable relief; and

18           (g)     the appropriate measure of restitution or damages to award to Plaintiff and

19 the Class.

20        35.     As detailed above, Conagra engaged in a common course of conduct giving rise to

21 the legal rights sought to be enforced by Plaintiff and Class members.  Any individual questions

22 that may arise are far outstripped by the numerous common issues.  Common issues therefore

23 predominate.

24        36.     The injuries sustained by Plaintiff and Class members flow from a common

25 nucleus of operative facts arising from Conagra's misconduct, based on the defective design of

26 these products that rendered the products potentially unsafe if microwaved.

27 / / /

28 / / /

37.     Plaintiff's claims are typical of the claims of the Class members.  Plaintiff's and the Class' injuries arose from a common set of facts arising from and directly connected to Conagra's unlawful conduct as detailed herein.

38.     Plaintiff will fairly and adequately protect the Class' interests.  Plaintiff has no interests materially adverse to or antagonistic with Class members' interests and has retained counsel with significant experience in the prosecution of class actions and complex litigation, including consumer litigation, and who will vigorously prosecute this action.

39.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy, and individual joinder of all Class members is impracticable, if not impossible because Class members are located throughout the United States.  Moreover, the cost to the court system of such individualized litigation would be substantial.  Individualized litigation would likewise present the potential for inconsistent or contradictory judgments and would result in significant delay and expense to all parties and multiple courts hearing virtually identical lawsuits.  There are no manageability issues Plaintiff foresees that cannot be overcome.  By contrast, a class action presents fewer management difficulties, conserves litigant and Court resources, protects Class members' rights and maximizes recovery.

40.     Conagra has acted on grounds generally applicable to the entire Class, thereby making final injunctive relief or corresponding declaratory relief appropriate with respect to the Class as a whole.

**COUNT I**

**Unlawful and Unfair Business Practices, California Business and Professions Code §§ 17200, *et seq*.**

41.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

42.     Conagra's practices as alleged in this Complaint constitute unlawful or unfair business practices under the Business and Professions Code §17200, *et seq.* ("UCL").  Such conduct also violates other comparable and applicable state consumer protection laws, which laws do not materially conflict with the UCL.

43.     Conagra committed unlawful business practices by engaging in conduct that violates the California Sherman Food, Drug and Cosmetic Act, Cal. Health & Safety Code §109875, *et seq.* (the "Sherman Law"), including but not limited to, Cal. Health & Safety Code §§110660 and 110620, *et seq.*, and analogous federal and state laws that prohibit the sale of adulterated or misbranded food products that do not contradict or conflict with such laws.  None of these federal or state laws and regulations define when the term "microwavable" can be used, and thus the claims asserted herein do not conflict with any direct federal prohibition or regulation relating to the use of such a term on the product's packaging.

44.     The Sherman Law states: "Any food is misbranded if its labeling is false or misleading in any particular."  Cal. Health & Safety Code §110660.[1]  The Sherman Law's prohibition of the misbranding of food is identical to federal laws that also prohibit the misbranding of food, including, but not limited to, the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §343(e) (food is "misbranded – if its labeling is false or misleading in any particular"); the Poultry Products Inspection Act, 21 U.S.C. §453(h)(1) ("The term 'misbranded' shall apply to any poultry product…if its labeling is false or misleading in any particular"); and the Federal

---

[1]  Federal food labeling provisions have been incorporated by reference into California law by the Sherman Law, Cal. Health and Safety Code §109875, *et seq. See* Cal. Health and Safety Code §110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.").  By incorporating the federal rules, California's regulation of food labeling parallels the federal provisions, and does not conflict with, intrude upon, or pose an obstacle to the enforcement of the federal statutes and regulations.  No Ninth Circuit decision has preempted a state law claim under the Federal Food, Drug, and Cosmetic Act ("FDCA"), and two district courts in California have recently considered "all natural" food labeling claims and found no basis in the FDCA for express preemption of state labeling requirements that are indistinguishable from the federal scheme.  *See, Hitt v. Arizona Beverage Co., LLC,* No. 08-809, S.D. Calif.; 2009 U.S. Dist. LEXIS 16871 ("Defendants' reliance on the breadth of the FDCA and FDA's regulatory labeling scheme does not support a finding of express preemption, which requires explicit statutory language preempting Plaintiff's claims.  The Court concludes that Plaintiff's claims are not expressly preempted." *Id.* at *7) and *Lockwood v. Conagra Foods, Inc.*, No. 08-4151, N.D. Calif.; 2009 U.S. Dist. LEXIS 10064 ("The Court…cannot conclude that plaintiffs' claims as currently pled are expressly preempted by section 343-1(a)(2). That provision prohibits a state from establishing any requirement for the labeling of food that is required by 21 U.S.C. section 343(c), unless such requirement is identical to the federal requirement."  *Id.* at *4.).

---

Meat Inspection Act, 21 U.S.C. §601(n)(1) ("The term 'misbranded' shall apply to any…meat or meat product…if its labeling is false or misleading in any particular").   Applying those definitions, these products are misbranded and therefore sold in violation of these federal and state laws because the product advertisements and box misleadingly suggest these products are microwavable (or safe to be consumed when cooked in a microwave oven) and the instructions are unreasonable to expect their targeted consumers to follow, and because even if one follows those directions in terms of the cooking time and wattage, the pot pies still do not reach the required temperature needed to kill potential pathogens.   Such conduct also constitutes misleading advertising as set forth in California Business and Professions Code §17500, *et seq., constitutes a violation of* the California Consumers Legal Remedies Act, Cal. Civil Code §1750, *et seq*. and constitutes systemic breaches of express and/or implied warranties.   Plaintiff reserves the right to identify additional violations of law as further investigation warrants.

45.   Conagra committed unfair business practices by:

a.   Engaging in conduct (the sale of defectively designed products that, if microwaved, could expose consumers to harmful pathogens) where the utility of such conduct (if any) is outweighed by the gravity of the consequences to Plaintiff and the Class;

b.   Engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and the Class; and/or

c.   Engaging in conduct that undermines or violates the intent or spirit of the food safety and consumer protection laws detailed herein.

46.   Plaintiff has suffered injury in fact and lost money as a result of Conagra's unlawful or unfair business practices, as she purchased the above adulterated and misbranded pot pie food products based in substantial part upon the reasonable belief such products were safe when microwaved and without having been advised of the material facts detailed herein, and has received no compensation therefor even though she now does not feel safe microwaving such products, depriving her of a key characteristic and benefit of such products.

47.   The above-described unlawful or unfair business acts and practices engaged in by Conagra continue to this day and present a threat to the Class and others in that Conagra has

1   failed to publicly acknowledge the wrongfulness of these actions and provide the complete relief

2   required by statute.

3       48.     Pursuant to California Business and Professions Code §17203 (and any other

4   comparable statutes the Court finds applicable), Plaintiff, individually and on behalf of the Class,

5   seeks an order from the Court prohibiting Conagra from continuing to engage in the unlawful and

6   unfair business acts or practices set forth in this Complaint, from failing to fully disclose the true

7   facts as set forth herein and/or ordering Conagra engage in a corrective informational campaign.

8       49.     Plaintiff also seeks an order from the Court requiring Conagra to provide complete

9   equitable monetary relief and such other monies as the trier of fact may deem necessary to deter

10  such conduct or prevent the use or enjoyment of all monies wrongfully obtained, including the

11  return of any monies paid that would not otherwise have been paid had the true facts been

12  disclosed by Conagra and/or if Conagra had complied with their legal obligations, plus any

13  interest thereon. Plaintiff also requests the Court order an asset freeze or constructive trust be

14  imposed over all monies that rightfully belong to the Class.

15      50.     Plaintiff, individually and on behalf of the Class, therefore seeks injunctive relief,

16  equitable monetary relief and all other relief the Court finds appropriate.

17                                  **COUNT II**

18                  **Violation of Consumers Legal Remedies Act**

19      51.     Plaintiff hereby incorporates the above allegations by reference as if fully set forth

20  herein.

21      52.     This cause of action is brought under the Consumers Legal Remedies Act,

22  California Civil Code §1750, *et seq.* ("CLRA"). Plaintiff is a consumer as defined by California

23  Civil Code §1761(d), and Conagra's frozen food products are goods within the meaning of the

24  CLRA.

25      53.     Conagra violated and continue to violate the CLRA by engaging in the following

26  deceptive practices proscribed by the California Civil Code §1770(a) that constitute transactions

27  intended to result in, and did result in, the sale of the frozen food products at issue herein to

28  Plaintiff and members of the Class in violation of, *inter alia*, the following provisions:

a.     Representing that the goods have characteristics, uses or benefits which they do not have (Cal. Civ. Code §1770(a)(5));

b.     Representing that the goods are of a particular standard, quality or grade if they are of another (Cal. Civ. Code §1770(a)(7));

c.     Representing that a transaction involves rights, remedies or obligations that are prohibited by law (Cal. Civ. Code §1770(a)(14));

d.     Representing that the goods have been supplied in accordance with a previous representation when they have not (Cal. Civ. Code §1770(a)(16).

54.    As detailed above, Plaintiff and the Class suffered damage by the wrongful acts and practices of Conagra, in violation of California Civil Code §1781.

55.    Pursuant to Section 1782 of the CLRA, Conagra has received notice in writing by certified mail of the particular violations of Section 1770 of the CLRA, demanding that Conagra offer to resolve the problems associated with the actions detailed above and give notice of all affected consumers of the intent to so act.  The time for Conagra to respond to those letters has passed without an agreement to take the action required by the CLRA on behalf of all affected consumers.

56.    Plaintiff and other members of the Class, in purchasing and using the Products as herein alleged, did reasonably act in response to Conagra's above representations or the omitted material facts detailed herein, to their damage.

57.    Based on its knowledge or reckless disregard of the facts as detailed herein, Conagra was guilty of acting with malice, oppression or fraud, and Plaintiff and members of the Class are also entitled to recover exemplary damages in addition to actual damages under Civil Code §1780(a)(4) for the reasons set forth above.

58.    Plaintiff and the Class pray for all relief set forth below, as appropriate under this cause of action.

/ / /

/ / /

**COUNT III**

**Breach of Express and Implied Warranties**

59.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

60.     Plaintiff and the Class purchased the food products at issue based in substantial part upon the claim such products were microwavable, and at least implicitly would be safe for consumption when they did so.

61.     These products are foodstuffs, and were not fit for the purposes for which they were intended, nor would they pass without objection in the trade or industry.

62.     Conagra was made to realize these issues, as despite receiving notice from Plaintiff of these claims requesting it resolve these breaches of warranties, to date it has refused to take any action to fully resolve this problem as to consumers who purchased these products.

63.     Because these are foodstuff products and such warranties are either expressly made through statements on the products or are implied by law in all consumer transactions, even if required by law, Plaintiff and the Class members who purchased such products are not required to establish direct privity with Conagra and are thus entitled to incidental and compensatory damages from Conagra.

**COUNT IV**

**Violation of Magnuson-Moss Warranty Act**

64.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

65.     Plaintiff and Class members are "consumers" within the meaning of the Magnuson-Moss Act.

66.     Conagra is a "supplier" and "warrantor" within the meaning of the Magnuson-Moss Act.

67.     The products at issue in this lawsuit are "consumer products" within the meaning of the Magnuson-Moss Act.

///

68.     Conagra's written affirmations of fact, promises and/or descriptions, as alleged herein, are each a "written warranty" and/or there exists an implied warranty for the sale of such products within the meaning of the Magnuson-Moss Act.

69.     For the reasons detailed above, Conagra refuses to recognize or honor such warranties.  Conagra breached its warranties as the products in question did not perform as represented by Conagra or were not fit for their intended use, and thereafter Conagra has refused to honor such warranties.  Conagra's conduct thereby caused damages to Plaintiff and members of the Class.

70.     The amount in controversy meets or exceeds the sum or value of $50,000 (exclusive of interest and costs) computed on the basis of all claims to be determined in this suit.

71.     Resorting to any informal dispute settlement procedure and/or affording Conagra a reasonable opportunity to cure its breach of written warranties is unnecessary and/or futile. Moreover, prior to initiating this action, Plaintiff provided Conagra with a written request to cure such breaches, which was ignored.  Any remedies available through any informal dispute settlement procedure would be inadequate under the circumstances, and Conagra has indicated it has no desire to participate in such a process.  Accordingly, any requirement under the Magnuson-Moss Act or otherwise that Plaintiff resort to any informal dispute settlement procedure and/or afford Conagra a reasonable opportunity to cure its breach of written warranties is excused and/or has been satisfied.

72.     As a result of Conagra's breach of warranties, Plaintiff and Class members have sustained damages and other losses in an amount to be determined at trial.  Plaintiff and Class members are entitled to recover damages, specific performance, diminution in value, costs, attorneys' fees, rescission, and/or other relief as is deemed appropriate.

**COUNT V**

**Common Counts and Unjust Enrichment / Common Law Restitution**

73.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

/ / /

74.   Conagra designed, manufactured, distributed, marketed and/or sold the above identified pot pie food products to Plaintiff and Class members.

75.   Plaintiff and the Class conferred upon Conagra economic benefits in the form of revenues and profits from the sale of these food products.  Conagra accepted or retained these benefits with awareness that Plaintiff and the Class had not received products of the characteristics, quality, nature, fitness or value as represented by Conagra.

76.   Allowing Conagra to retain the benefits conferred by Plaintiff and the Class under these circumstances is unjust and inequitable.

77.   As a result of Conagra's unjust enrichment, Plaintiff and the Class have suffered harm and thus seek an order for disgorgement and restitution of Conagra's revenues, profits and other benefits from the sale of potentially contaminated food products.

**COUNT VI**

**Declaratory Relief**

78.   Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

79.   An actual controversy over which this Court has jurisdiction now exists between Plaintiff and the Class and Conagra concerning their respective rights, duties and obligations for which Plaintiff desires a declaration of rights under the applicable claims asserted herein.

80.   Plaintiff and Class members may be without adequate remedy at law, rendering declaratory relief appropriate in that:

(a)   damages may not adequately compensate the Class members for the injuries suffered, nor may other claims permit such relief;

(b)   the relief sought herein in terms of ceasing such practices or providing a full and complete corrective disclosure may not be fully accomplished by awarding damages; and

(c)   if the conduct complained of is not enjoined, harm will result to Class members and the general public because Conagra's wrongful conduct is continuing and persons are entitled to the direct monies taken from them.

/ / /

81.     Plaintiff requests a judicial determination and declaration of the rights of Class members or the public, and the corresponding responsibilities of Conagra.  Plaintiff also requests an order declaring Conagra is obligated to pay restitution to all members of the Class as appropriate and otherwise pay over all funds Conagra wrongfully acquired either directly or indirectly because of the illegal conduct by which Conagra was unjustly enriched.

82.     A judicial declaration is necessary and appropriate at this time under the circumstances so the parties may ascertain their respective rights and duties.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, prays for judgment against Conagra, as follows:

1.     certify this action as a class action under Federal Rules of Civil Procedure 23, designating Plaintiff as class representative and counsel as class counsel;

2.     awarding declaratory, equitable and injunctive relief, including enjoining Conagra from continuing the illegal practices set forth above, and ordering Conagra to pay monetary relief in terms of all monies acquired by means of any unlawful act or practice;

3.     awarding compensatory and incidental damages, in an amount to be proven at trial, and as appropriate for the particular causes of action, as well as exemplary damages under the CLRA;

4.     awarding all costs and expenses incurred in prosecuting this action, including reasonable attorneys' fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5 and California Civil Code §1780;

5.     awarding pre- and post-judgment interest; and

6.     all other relief the Court deems appropriate.

/ / /

/ / /

/ / /

/ / /

/ / /

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

DATED:   December 31, 2009

THE CONSUMER LAW GROUP

By:   S/Alan M. Mansfield
        Alan M. Mansfield
        alan@clgca.com
9466 Black Mountain Rd., Suite 225
San Diego, CA  92126
Tel: (619) 308-5034
Fax: (888) 341-5048

WHATLEY DRAKE & KALLAS, LLC
Joe R. Whatley, Jr.
jwhatley@wdklaw.com
Edith M. Kallas
ekallas@wdklaw.com
Patrick J. Sheehan
psheehan@wdklaw.com
1540 Broadway, 37th Floor
New York, NY 10036
Tel: (212) 447-7070
Fax: (212) 447-7077

Howard Rubinstein
Attorney at Law
howardr@pdq.net
914 Waters Avenue, Suite 20
Aspen, CO 81611
Tel: (832) 715-2788

Attorneys for Plaintiffs

EXHIBIT 1



16

**Banquet**

MICROWAVEABLE

**Banquet**

Pot Pie

C ABCDABQD
BURD   kba
FLETCHER   cr80

MICROWAVEABLE

35%   20%

NET WT
7 OZ (198g)   KEEP FROZEN

35%   20%

START MAKING CHOICES.com

# Banquet

## MICROWAVEABLE



### For Food Safety And Quality:
- Keep frozen; do not thaw.
- Ovens and wattages vary. Adjust cooking times as needed.
- Product must be cooked thoroughly. Read and follow these cooking directions.

*For more information, go to www.conagrafoods.com/mwcooking or call 1-800-257-5191.*

**MICROWAVE OVEN**    *Cook only one product at a time.*

**1** **PLACE** pot pie on microwave-safe plate; **slit top crust.**

**2** **MICROWAVE** on HIGH.

| 1100 watt oven or more | 4 to 6 minutes |

**DO NOT COOK** in microwave ovens below 1100 watts as pot pie may not cook thoroughly. Conventional oven preparation is recommended.

**3** **LET STAND 3 MINUTES** in microwave to complete cooking. **CAREFULLY REMOVE** as product will be hot.

**4** **CHECK** that pot pie is cooked thoroughly.    165°F
- **Internal temperature needs to reach 165° F** as measured by a food thermometer in several spots.
- Crust is golden brown and steam rises from filling.

**CONVENTIONAL OVEN**    *Do not prepare in toaster oven.*

**1** **PREHEAT** oven to 400°F. Place pot pie on cookie sheet, slit top crust.

**2** **BAKE** in oven 30 to 32 minutes, CAREFULLY REMOVE as product will be hot.

**3** **LET STAND 5 MINUTES** to complete cooking.

**4** **CHECK** that pot pie is cooked thoroughly.
- Internal temperature needs to reach 165°F as measured by a food thermometer in several spots.
- Crust is golden brown and steam rises from filling.

*Temperatures above 400°F AND/OR failure to use a COOKIE SHEET may cause damage to the pot pie contents, food and oven.*

0  31000 10103  9

Job: 67044-35081
PO # BL8091
BP-2714
Printed: 1/09