IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JULIE MEAUNRIT, | No. C 09-02220 CRB |
| Plaintiff, | **ORDER GRANTING MOTION TO DISMISS** |
| v. | |
| CONAGRA FOODS INC., | |
| Defendant. | |

This case concerns allegations that Defendant ConAgra's preparation instructions for its chicken pot pies are inadequate under California law, and allegations that Defendant's production facilities do not adequately prevent bacterial contamination in its products. Plaintiff contends that the directions are too difficult for the average consumer to follow, and that consumers are therefore likely to subject themselves to food-borne illness due to inadequate safety procedures at the plant. Defendant moves to dismiss Plaintiff's complaint for lack of subject matter jurisdiction and for failure to state a claim. Having considered all the papers submitted by the parties, the Court GRANTS Defendant's Motion to Dismiss.

**BACKGROUND**

Plaintiff Julie Meaunrit is a resident of San Francisco. Second Amend. Comp. ("SAC") ¶ 8. Plaintiff alleges that she has purchased Defendant's chicken pot pies for many years, but that "[b]ased on recents report, [she] believes she had no choice but to throw out

these products as she cannot guarantee the safety of these products, as a result of which she sustained a loss of money or property." Id. ¶ 8.

In order to support the conclusion that the pot pies were unsafe, the complaint alleges that "[p]revious reports have indicated that frozen food products have been found to contain various bacteria, including chloriform or Salmonella and other pathogens." Id. ¶ 10. Even "if [Plaintiff] follows the cooking directions, the product does not reach the 'kill step' temperature" necessary to kill various bacteriological contaminants. Id. ¶ 8. However, the complaint does not allege that Plaintiff's chicken pot pies, or any of the pot pies sold by ConAgra, were in fact contaminated. Instead, the complaint alleges that "Conagra failed to properly test and screen product ingredients during and after the manufacturing process and failed to design these products to be cooked in a manner that ensures these products were safe." Id. ¶ 23. Elsewhere, the complaint alleges that "Conagra's design, oversight and quality controls were and are inadequate, resulting in the potential for Salmonella and other pathogens to be in these food products and not destroyed when cooked, even though these products are intended to be consumed by young children." Id. ¶ 21. The complaint never goes any further than alleging that the pot pies are "potential" pathogen carriers.

In order to link this alleged "potential" contamination to allegations regarding the product's labeling, Plaintiff explains that "[r]easonable consumers would attach importance to facts regarding the potential of such pathogens in these products in determining whether to purchase such products, making such facts material to consumers. However, under the circumstances present here, no reasonable consumer could make such a determination, particularly prior to purchasing such products." Id. ¶ 15. Plaintiff then alleges that these instructions are too complicated to protect consumers. "[W]hile it might be relatively easy to figure out when certain foods are 'well-done' by physically checking the food, it is unreasonable to expect consumers know how the cooking power of their microwave ovens compares with other ovens, or potentially even to know what that wattage is." Id. ¶ 15.

Next, the complaint alleges that "in October 2007, at least 270 people in 36 American states got sick with Salmonella after eating ConAgra's pot pies, leading to a national recall

2

1  and prompting many to question the safety of microwave cooking." Id. ¶ 19.  While this
2  Plaintiff does not allege that she was ever sick with Salmonella, she alleges that "Conagra
3  was on notice and either knew, or should have known, that it needs to be particularly vigilant
4  about the presence of Salmonella or other pathogens in the supply chain and the need to
5  design its products to kill such pathogens, or avoid them altogether." Id. ¶ 19.  It should be
6  noted that the class in this case is defined as individuals who purchased pies "since January
7  1, 2008," a few months after the recall.  Defendant notes that a series of cases have been filed
8  as a result of the pre-recall sicknesses, but that this case concerns only individuals who
9  purchased after January 1, 2008.

10  Finally, the complaint alleges that Plaintiff "reviewed and considered ConAgra's in-
11  store promotions that its pot pie products were quickly microwaveable in making her
12  purchase." Id. ¶ 25. She does not specify where or when she saw these in-store promotions,
13  only that the guarantee of microwaveability was a substantial factor in her decision to
14  purchase the pies. Id. ¶ 8.

15  On the basis of these allegations, Plaintiff asserts causes of action under California
16  Unfair Competition Law, the Consumer Legal Remedies Act, breach of implied and express
17  warranties, the Magnuson-Moss Warranty Act, common-law restitution, strict liability, and
18  declaratory relief.

## DISCUSSION

Plaintiff's claims fail for two independent reasons.  First, Plaintiff's claims are preempted by federal law.  Conagra's labeling at issue in this case was approved by the relevant federal agency, and hence is presumptively lawful under federal law.  Federal law further specifies that states are prohibited from imposing any requirements for labeling beyond those imposed by federal law, and the Supreme Court has held that this prohibition also applies to state common-law actions.  Plaintiff has amended her complaint to assert that her state-law claims do not conflict with the Federal Food, Drug, Cosmetic Act ("FDCA").  This argument is irrelevant because ConAgra's pie labels and production facilities are

3

regulated by the Federal Meat Inspection Act ("FMIA") and Poultry Products Inspection Act ("PPIA") and Plaintiff must therefore plead a violation of these two statutes. Plaintiff also alleges that a ConAgra in-store sign stating that its pies are microwaveable is outside the scope of FMIA/PPIA preemption because the sign is not a label. This claim fails as well because the FMIA and PPIA include accompanying in-store materials as labels for purposes of the law. Accordingly, Plaintiff's claims, as presently drafted, are preempted.

Second, Plaintiff's complaint simply fails to allege sufficient facts to establish a cause of action. As to allegations regarding ConAgra's production facility, plaintiff alleges no facts to support her claims for relief. She simply offers the conclusion that procedures at the factory were inadequate. As to allegations regarding the labeling, Plaintiff ignores the portions of the label that undermine her argument. The label specifically informs the consumer that the product is microwaveable only in a certain class of microwave, and that consumers must ensure that the product is sufficiently heated before eating. There is nothing false about a label that accurately informed Plaintiff that not all microwaves are suitable. As to her new allegation regarding the in-store sign, Plaintiff only states that she "recalls" seeing the sign, but provides no information about where or when she saw it. Without facts to support these allegations, the complaint is subject to dismissal**.**

## I.     Dismissal under Federal Rule 12(b)(1)

Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case. Federal subject matter jurisdiction must exist at the time the action is commenced. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988). A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears. Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed R. Civ. P. 12(b)(1). A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an

1  actual lack of jurisdiction which exists despite the formal sufficiency of the complaint.
2  Thornhill Publ'g Co. v. Gen Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts
3  v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). Because challenges to standing implicate
4  a federal court's subject matter jurisdiction under Article III of the United States
5  Constitution, they are properly raised in a motion to dismiss under Rule 12(b)(1). White v.
6  Lee, 227 F.3d 1214, 1242 (9th Cir. 2000).

### A. Standing

Defendant argues that Plaintiff lacks standing. To establish standing, a plaintiff must show: "(1) he or she had suffered an injury in fact that is concrete and particularized, and actual or imminent; (2) the injury is fairly traceable to the challenged conduct; and (3) the injury is likely to be redressed by a favorable court decision." Salmon Spawning & Recovery Alliance v. Gutierrez, 545 F.3d 1220, 1225 (9th Cir. 2008). A concrete injury is one that is "'distinct and palpable . . . as opposed to merely abstract.'" Schmier v. U.S. Court of Appeals for 9th Circuit, 279 F.3d 817, 821 (9th Cir. 2002) (quoting Whitmore v. Arkansas, 495 U.S. 149, 155 (1990)). The "injury must have actually occurred or must occur imminently; hypothetical speculative or other 'possible future' injuries do not count in the standings calculus." Schmier, 279 F.3d at 821 (citing Whitmore, 495 U.S. at 155).

ConAgra argues that Plaintiff does not have standing because she suffered no physical or emotional injury. While she does not claim that she ever became sick, or even that the pies she purchased were actually contaminated in any way, Plaintiff has alleged she suffered an economic injury caused by ConAgra's alleged misrepresentation about the microwaveability of its pies.

Plaintiff's allegation is distinguishable from those in Birdsong v. Apple, Inc., 590 F.3d 955 (9th Cir. 2009), where the Ninth Circuit ruled the plaintiffs lacked standing because they alleged only a "conjectural and hypothetical" injury. The plaintiffs there alleged that the Apple iPod was defective because it could be used at volumes that pose a risk of noise-induced hearing loss. Id. at 961. They did not allege that they or anyone else suffered an injury from using the iPod as designed. Id. at 960. The court concluded that the plaintiffs had

5

not suffered an economic injury because the "alleged loss in value [of the iPod] does not constitute a distinct and palpable injury that is actual or imminent because it rests on a hypothetical risk of hearing loss to other consumers who may or may not choose to use their iPods in a risky manner." Id. at 961

In the instant case, Plaintiff alleges she threw ConAgra's pies away because of the possibility that they may not reach the "kill-step" temperature required to eliminate any pathogens. Her allegation of economic loss is distinguishable from Birdsong because in this case she alleges that she purchased Defendant's pies based on the representation that they were microwaveable. SAC. ¶ 8. She then alleges that they were not, in fact, microwaveable as she believed, so she threw them away. Id. In Birdsong, by contrast, Apple never made a representation that there was no risk of hearing loss from use of the iPod - in fact, Apple included a warning about hearing damage with each iPod. 590 F.3d at 956. Nor did the Plaintiff throw away the product. If indeed Plaintiff purchased a product based on an alleged representation, and the product ultimately did not satisfy that representation such that Plaintiff had no use for it, this constitutes an injury. See, e.g., Sanchez v. Wal-Mart Stores, Inc., No. 06-2573, 2008 WL 3272101 (E.D. Cal. Aug. 6, 2008) (finding standing where a plaintiff alleged that she would not have purchased a certain product but for certain misrepresentations, even though plaintiff never suffered physical or emotional injury). While ConAgra may indeed be correct that there is no cognizeable cause of action in this case—i.e., there was no actionable misrepresentation—this is not the same thing as finding the plaintiff lacks standing. Plaintiff alleges an injury, and alleges that it was caused by defendant's actions. Asking whether or not she has a legally cognizeable claim is not the same thing as asking whether she has suffered an injury in fact.

**II.     Dismissal under Federal Rule 12(b)(6)**

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. V.

6

Twombly, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff.  NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true.  Ashcroft v. Iqbal, __ U.S. __, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

Although the court is generally confined to consideration of the allegations in the pleadings, when the complaint is accompanied by attached documents, such documents are deemed part of the complaint and may be considered in evaluating the merits of a rule 12(b)(6) motions.  Durning v. First Boston Corp., 815 F.2d 1265, 1267 (9th Cir. 1987).

### A.    Federal Preemption

Defendant also argue that certain of Plaintiff's claims are preempted by federal law, and that this Court therefore does not have jurisdiction to hear them.  Under the Supremacy Clause, state law that conflicts with federal law has no effect. Cipollone v. Liggett Group, Inc., 505 U.S. 504, 516 (1992) (citing U.S. Const. Art. VI, cl. 2). "[W]ithin Constitutional limits Congress may preempt state authority by so stating in express terms." Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 203 (1983).

A court's preemption analysis is guided by two principles.  "First, there is a presumption against supplanting 'the historic police powers of the States' by federal legislation 'unless that [is] the clear and manifest purpose of Congress.'" Gordon v. Virtumundo, Inc., 575 F.3d 1040, 1060 (9th Cir. 2009) (quoting Medtronic v. Lohr, 518 U.S. 470, 485 (1996)) (alteration marks in Gordon) As a result, express preemption clauses should be narrowly construed. Gordon, 575 F.3d at 1060. Second, Congress's purpose "'is the ultimate touchstone in every preemption case.'" Gordon, 575 F.3d at 1060 (quoting Medtronic, 518 U.S. at 485). Thus, courts must analyze the language of the statute and the overall statutory scheme. Gordon, 575 F.3d at 1060.

In conducting a preemption analysis, a court "must consider the theory of each claim and determine 'whether the legal duty that is the predicate' of that claim is inconsistent with" federal law. Metrophones Telecomm'ns, Inc. v. Global Crossing Telecomm'ns, Inc., 423 F.3d 1056, 1075 (9th Cir. 2005). (quoting Cipollone, 505 U.S. at 523-24).

Congress enacted the FMIA and the PPIA in part to prevent the interstate transfer of adulterated and misbranded meat and poultry products. See 21 U.S.C. §§ 452 and 602. Specifically, the FMIA states that it "is essential in the public interest that the health and welfare of consumers be protected by assuring that meat and meat food products distributed to them are wholesome, not adulterated, and properly marked, labeled, and packaged." Id. § 602.

The FMIA and the PPIA preempt state laws that satisfy two conditions: (1) the state law must impose marking, labeling, packaging or ingredient requirements; and (2) these requirements must be "in addition to, or different than" those required under federal law. 21 U.S.C. §§ 467e and 678. State statutory and common law can impose requirements that satisfy the first prong. For the purposes of preemption, "a 'requirement' is a 'rule of law that must be obeyed,' whether it arises from common law principles enforceable in damages actions or in a statute." Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1171 (9th Cir. 2009) (quoting Bates v. Dow Agrosciences LLC, 544 U.S. 431, 445 (2005)); see also Reigel v. Medtronic, Inc., 552 U.S. 312, 324 (2008) ("Absent other indication, reference to a State's 'requirements' includes its common-law duties.") Concerning the second prong, a state requirement is in addition to or different from federal requirements if it is not "equivalent" or "parallel." Bates, 544 U.S. at 447. A "state cause of action that seeks to enforce a federal requirement 'does not impose a requirement that is different from or in addition to, requirements under federal law.'" Id. at 448 (quoting Medtronic, 518 U.S. at 513 (O'Connor, J., concurring in part and dissenting in part)).

Plaintiff's UCL, CLRA, breach of express and implied warranty, and common-law claims against defendant are based on what she alleges are improper production practices at

8

ConAgra's meat pie factories and misleading labeling on it pies. ConAgra argues that all of plaintiff's claims are preempted by federal law.[1]  In particular, ConAgra argues that the express preemption provisions of the PPIA and the FMIA preempt these state claims.[2]

Defendant argues that these preemption provisions preempt Plaintiff's entire complaint.  First, as to the claims relying on conditions at ConAgra's plant, Defendant has presented judicially noticeable evidence that the facility in question is inspected by the FDA.[3] See Hawk Decl. ISO Mot to Dismiss 1st Am. Compl., ex. A.  These inspections enforce various federal regulations that require "a hazard analysis to determine the food safety hazards likely to occur in the production process and identify preventative measures" to control "microbiological contamination."  9 C.F.R. § 471.2.  Regulations also prescribe specific "standard operating procedures" for sanitation at inspected establishments.  9 C.F.R. § 416.11.  Plaintiff makes no allegations that these inspections were flawed, nor that the relevant sections of the federal regulations were violated.  Instead, Plaintiff seeks broad relief based on a series of state statutes, and has made no showing that these statutes impose identical requirements as federal regulations.  While the preemption provisions suggest that a state can provide a cause of action to enforce federal requirements, it forbids any requirements that are "different than those made under" the federal acts.  Given that the federal facility is inspected by the FDA and that plaintiff does not allege any violation of federal regulations, Plaintiff's claims are  federally preempted as to claims against ConAgra's facilities.

---

[1] ConAgra filed a Statement of Recent Decision to call to the Court's attention the recent Northern District decision in a separate lawsuit filed by plaintiff, Meaunrit v. The Pinnacle Food Groups, No. 09-0455 (N.D. Cal. 2010). Judge Wilken ruled that plaintiff's claims were preempted by the FMIA and PPIA and that she failed to plead sufficient facts.  The claims and factual allegations are nearly identical to the instant case, with the exception of the FDCA and in-store sign amendments.

[2] The Second Amended Complaint asserts one federal claim under the Magnuson-Moss Act, which of course is not preempted.  However, this cause of action still fails as explained in the next section.

[3] Plaintiff does not contend that this evidence is not judicially noticeable.

Next, Defendant argues that any claims regarding its labeling and instructions are federally preempted. Indeed, as noted above, the FMIA and PPIA preempt state-law causes of actions that seek to impose different requirements on labeling. Defendant contends that in this case, where it received federal pre-approval of its label, state claims are preempted. That pre-approval process for labels involves a determination of whether the labels are "false or misleading." 21 U.S.C. § 457. In Riegel, the Supreme Court addressed the consequence of federal pre-approval of a pharmaceutical label where a plaintiff brought state claims alleging, *inter alia*, that the labels violated state law. 128 S. Ct. at 1008-11. The Court noted that the pre-approval "process includes review of the device's proposed labeling." Id. at 1004. As in this case, that review included a determination that "the proposed labeling is neither false nor misleading." Id. The Riegel court concluded that because the pre-approval process included a determination under federal law whether the labels were acceptable, a state-law challenge to those labels was preempted.

Indeed, a variety of cases have found that the relevant federal statutes sweep broadly enough to preempt similar claims. See e.g., Animal Legal Defense Fund v. Provimi Veal Corp., 626 F. Supp. 278, 282 (D. Mass. 1986) (holding that the FMIA preemption provision, in conjunction with the FDA, precluded consumer protection claims regarding antibiotic use in veal); Boulahanis v. Prevo's Family Market, Inc., 583 N.W.2d 509, 510-12 (Mich Ct. App. 1998) (holding that the FMIA preempts warranty and negligence claims regarding distribution of contaminated meat); Kircos v. Holiday Food Ctr., Inc., 477 N.W.2d 130, 131-33 (Mich Ct. App. 1991) (finding that federal regulation preempts state claims relating to trichinae-infected pork). Because the pre-approval process includes a determination of whether the labeling is false and misleading, and the gravamen of Plaintiff's attack on the label concerns whether those instructions are accurate, the plaintiff's state causes of action are preempted by federal law.

On the Court's instruction to plead to a violation of federal law other than her allegation of misleading labeling, Plaintiff instead amended her complaint to argue that the FMIA and PPIA have no preemptive effect because her state-law claims do not conflict with

10

the FDCA. Her amendment is based on the theory that because California's Sherman misbranding law is identical to the FDCA, preemption is not proper because there is no issue of the state law imposing requirements additional to, or different than federal law. Defendant points out, correctly, that its pies are subject to the FMIA and PPIA, and any discussion of the lack of conflict between the FDCA and the analogous state law is irrelevant.

Plaintiff's FDCA argument is essentially an attempt to sidestep FMIA/PPIA preemption and does not assert any cognizable violation of federal law. Her FDCA theory ignores the fact that ConAgra's labeling was pre-approved by the USDA and FSIS in accordance with the FMIA and PPIA. She also argues that preemption is not applicable in the instant case "since both the [California] Sherman Law and the FMIA and PPIA prohibit false or misleading statements from being included on a label or packaging." Opp'n at 6. She cites as support the In re Farm Raised Salmon Cases, 42 Cal. 4th 1077 (2008), in which the California Supreme Court held that a state consumer protection law was not preempted by the FDCA because the two regulations were identical and therefore enforcing state law did not impose requirements additional to, or different than federal law. This case is distinguishable, however, because there was no federal pre-approval of product labeling and thus no inherent issue of imposing different or additional requirements. Plaintiff takes the underlying logic of this case and twists it to assert that if she can allege a violation of one federal law in which preemption is not implicated, she can then ignore the existence and preemptive effect of other federal laws, specifically the FMIA and PPIA. In the instant matter, the USDA and FSIS pre-approved ConAgra's labeling, which means that any liability Plaintiff seeks to attach based on a state law would impose requirements on ConAgra additional to, or different than federal law.

Finally, Plaintiff alleges that an in-store cardboard sign she once saw at a retailer promoting ConAgra's microwaveable pies was misleading and induced her to buy a pie that was not in fact microwaveable. Her position is that FMIA/PPIA preemption is not applicable because the sign constitutes an advertisement rather than a label. ConAgra argues that the

11

FMIA and PPIA preemption of state law labeling requirements extends to point-of-sale materials such as the promotional display identified by plaintiff.

Plaintiff has not stated a valid claim because the plain language of the FMIA and relevant case law define "labeling," with respect to federal preemption, to include point-of-sale materials. The FMIA defines "labeling" as "all labels and other written, printed or graphic matter (1) upon any article or any of its containers or wrappers, or (2) <u>accompanying such article</u>." 21 U.S.C. § 601(p) (emphasis added). In its decision in <u>Kordel v. United States</u>, 335 U.S. 345 (1948), the Court ruled that the FDCA's definition of "labeling" included circulars or pamphlets displayed in store. The <u>Kordel</u> decision, while addressing the FDCA, is still relevant in this analysis because the FIMA contains the same definition of "labeling" as the FDCA, an intentional decision by Congress to preclude states from enacting their own point-of-sale requirements. <u>American Meat Inst. v. Leeman</u>, 180 Cal. App. 4th 728, 759 (2009). Accordingly, it cannot be said that the in-store poster Plaintiff alleges she saw was an advertisement rather than a label for purposes of federal preemption.

Given that there is a set of federal regulations that regulates ConAgra's pot pie label and in-store promotions, and that Plaintiff has failed to allege that ConAgra's label fails to satisfy these regulations, all of the state-law claims are preempted by federal law.

**B.     Failure to State a Claim**

Defendant also argues that Plaintiff's factual allegations fail to "state a claim to relief that is plausible on its face." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007). Plaintiff contends that her allegations comply with Rule 8(b) and that her claims are not subject to Rule 9 (b) but satisfy its requirements nonetheless. Her allegations concerning the production of the pies must meet Rule 8(b) requirements, which they do not. The basis of Plaintiff's claims regarding labeling is misrepresentation, which implies ConAgra engaged in fraud, and therefore she must comply with Rule 9(b). "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. Proc. 9(b). The allegations must be "specific enough to give defendants notice of the

12

particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985). Statements of the time, place and nature of the alleged fraudulent activities are sufficient, id. at 735, provided the plaintiff sets forth "what is false or misleading about a statement, and why it is false." In re GlenFed, Inc, Sec. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994). Scienter may be averred generally, simply by saying that it existed. Id. at 1547; see Fed. R. Civ. Proc. 9(b) ("Malice, intent, knowledge and other condition of mind of a person may be averred generally.") As her complaint now stands, plaintiff has not met the Rule 9(b) requirements, nor even the requirements of Rule 8.

Plaintiff's adulteration claims assert only that "Conagra failed to use appropriate quality control measures within its supply chain," and that it "does not adequately test for pathogens." SAC ¶¶ 2, 12. However, Plaintiff fails to allege what constitutes an "appropriate" control measure, and further fails to specifically allege what is inadequate about ConAgra's procedures. In sum, the complaint's allegations with regard to the factory procedure are nothing more than conclusory.

Plaintiff's allegations with regard to the instructions are little better. Plaintiff attaches a copy of the product's label to its complaint. The instructions clearly state that the product must be heated to 165 degrees before consumption, and that the product is only "microwaveable" in a 1100 watt oven. While Plaintiff alleges that the 165 degree temperature might not be reached even after following the step-by-step instructions, Plaintiff impliedly concedes that she did not use a 1100 watt oven. In other words, she did not follow the directions. Further, given that the instructions advise that the product not be eaten unless it has reached 165 degrees, Plaintiff should at least allege that despite attempting to reach that temperature, her oven was unable to do it. Plaintiff's selective reference to only a portion of the cooking instructions, ignoring the portion that clearly instructs the consumer not to consume a pie unless it has been heated to 165 degrees, is fatal. Had Plaintiff alleged that, even after a far longer period of cooking, the pie failed to reach the kill temperature, that

13

would be a different case. But given that Plaintiff's case assumes that a portion of the instructions is ignored, it is not reasonable to fault the instructions themselves.

All Plaintiff's claims rest on the inadequacy of the instructions. However, Plaintiff seems to concede that she simply did not follow the instructions. The instructions require an 1100 watt oven. Plaintiff does not allege that she used such an oven. The instructions also require that the consumer test the temperature of the pie. Plaintiff does not allege that she did so. Instead, Plaintiff alleges that if she followed only some of the instructions, the pie was not sufficiently hot. If Plaintiff chose not to follow the instructions, ConAgra cannot be blamed.

Plaintiff has also failed to plead sufficient facts to support her allegation regarding the in-store promotions. In her amended complaint she "recalls seeing advertisements for these products stating that [the pies] were microwaveable, including on small cardboard signs protruding from the frozen food section where she purchased such products." SAC ¶ 8. Plaintiff does not provide where or when she saw the sign, whether it was in fact promoting a ConAgra product, or whether ConAgra or the retailer was responsible for its creation and placement. Even if Plaintiff can provide proof of these signs, her claim fails regardless. Given that ConAgra received federal pre-approval for placing microwaveable on its pie labelling, and that the signs are extensions of the labels, if in fact the signs read "microwaveable", which is all that Plaintiff alleges, there would simply be no federal violation.

Finally, Plaintiff's Magnuson-Moss Act cause of action, discussed briefly in footnote two in the previous section, fails as well. The Magnuson-Moss Act requires that a plaintiff successfully plead a violation of a state warranty law. Birdsong, 590 F.3d at 958 n.2; Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1022 (9th Cir. 2008). Because all of Plaintiff's state-law claims fail, her Magnuson-Moss claim must fail, too.

//

//

14

**Conclusion**

Plaintiff's complaint is dismissed on two grounds: (1) as pled, it is preempted by federal law, and (2) Plaintiff's allegations fail to state a claim upon which relief can be granted.. Because Plaintiff has already had an opportunity to correct these inadequacies, and has failed to do so, dismissal is with PREJUDICE.

**IT IS SO ORDERED.**

Dated: July 20, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE